102 F.3d 999
 96 Cal. Daily Op. Serv. 9220, 96 Daily Journal
D.A.R. 15,229
UNITED STATES of America, Plaintiff-Appellant,
v.
CAL-ALMOND INC., Defendant-Appellee,
and
Gold Hills Nut Co., Inc.; Del Rio Nut Co. Inc.; James G.
Crecilius, dba Monte Vista Farming Company, Defendants.
UNITED STATES of America, Plaintiff-Appellant,
v.
CAL-ALMOND INC.; Gold Hills Nut Co., Inc.; Del Rio Nut Co.
Inc.; James G. Crecilius, dba Monte Vista Farming
Company, Defendants-Appellees.
 Nos. 95-17209, 95-17333.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 13, 1996.
Decided Dec. 19, 1996.
 
 Frank W. Hunger and Mark W. Pennak, United States Department of Justice, Washington, DC, for plaintiff-appellant.
 Brian C. Leighton, Clovis, CA, for defendant-appellee, Cal-Almond, Inc.
 Ronald C. Hillberg, Turlock, CA, for defendant-appellee, Del Rio Nut Company.
 Appeals from the United States District Court for the Eastern District of California, Robert E. Coyle, District Judge, Presiding. D.C. No. CV-94-05985-REC.
 Before: WIGGINS and TROTT, Circuit Judges, and VANCE,** District Judge.
 WIGGINS, Circuit Judge:
 
 
 1
 The United States appeals the district court's order denying a preliminary injunction requesting enforcement of an almond marketing order promulgated by the Secretary of Agriculture pursuant to the Agricultural Marketing Agreement Act of 1937 ("the Act"). See 7 U.S.C. § 608c. The government also appeals the district court's order requiring the Almond Board to place Appellee Cal-Almond's payment of assessments for the 1992-93 and 1993-94 season into escrow. We have jurisdiction over these timely appeals pursuant to 28 U.S.C. § 1292(a)(1) and we AFFIRM.
 
 I.
 
 2
 In Cal-Almond, Inc. v. United States Department of Agriculture, 14 F.3d 429 (9th Cir.1993) ("Cal-Almond I "), we held that the Almond Board's advertising and promotion program for the 1980-81 through 1990-91 seasons violated the First Amendment rights of the almond handlers. Subsequently, we held that the handlers were entitled to a refund of all advertising and promotion assessments paid to the Almond Board or escrowed during the pendency of the administrative petition proceedings. Cal-Almond, Inc. v. United States Department of Agriculture, 67 F.3d 874 (9th Cir.1995), cert. denied, --- U.S. ----, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996) ("Cal-Almond II "). We also held, however, that sovereign immunity barred the recovery of money the handlers paid to third parties for creditable advertising under the marketing order, since recovery of such sums would constitute damages. Id. at 877-79.
 
 
 3
 In response to the Cal-Almond litigation, the Department of Agriculture changed the marketing order and administrative rules and regulations, starting with the 1993-94 season. 58 Fed.Reg. § 43500 (Aug. 17, 1993). Five almond handlers ("the handlers")[1] filed an administrative petition under 7 U.S.C. § 608c(15)(A) challenging the promotion plan as unlawful for the subsequent marketing years not covered by the Cal-Almond I litigation (the 1992-93, 1993-94 and 1994-95 seasons). On June 15, 1995, the administrative law judge ruled in favor of the handlers, finding that under Cal-Almond I the revised regulations violate the handlers' First Amendment rights. The Secretary appealed the decision and the appeal is still pending before the Department of Agriculture's Judicial Officer.
 
 
 4
 Meanwhile, on September 23, 1994, while the administrative petition was pending, the United States brought an enforcement action for the 1993-94 season against the handlers pursuant to 7 U.S.C. § 608a(6). The government moved for summary judgment and for a preliminary injunction requiring the handlers to pay all assessments due and owing to the Almond Board during the pendency of the administrative proceedings. While these motions were pending, Cal-Almond mistakenly paid the Almond Board all back-due advertising and promotion assessments for the 1992-93 and 1993-94 seasons. Cal-Almond moved for return of the money. On September 12, 1995, the district court ordered the Almond Board to place the $862,549 erroneously paid by Cal-Almond into the clerk's registry ("the escrow order"). On September 22, 1995, the district court denied the government's motion for summary judgment and for a preliminary injunction. The government timely appealed both orders.
 
 II.
 
 5
 A. JURISDICTION OVER THE APPEAL FROM THE ESCROW ORDER
 
 
 6
 As a preliminary issue, we must determine whether we have jurisdiction over the government's appeal from the escrow order. 28 U.S.C. § 1292(a)(1) provides this court with jurisdiction over appeals from "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions...." An order that is not labelled as an order denying or granting a preliminary injunction may still be appealable under § 1292(a) if (1) it has the "practical effect" of granting or denying a preliminary injunction, (2) it has " ' "serious, perhaps irreparable consequences," ' " and (3) it " 'can be "effectively challenged" only by immediate appeal.' " Orange County v. Hongkong & Shanghai Banking Corp., Ltd., 52 F.3d 821, 825 (9th Cir.1995) (quoting Sierra Club v. Electronic Controls Design, 909 F.2d 1350, 1353 (9th Cir.1990)).
 
 
 7
 In determining whether an order has the practical effect of granting or denying an injunction, we evaluate the order in light of the essential attributes of an injunction. The three fundamental characteristics of an injunction are that it is (1) "directed to a party," (2) "enforceable by contempt," and (3) "designed to accord or protect 'some or all of the substantive relief sought by a complaint' in more than preliminary fashion."
 
 
 8
 Id. (quoting 16 Charles A. Wright et al., Federal Practice and Procedure § 3922 at 29 (1977)).
 
 
 9
 Here, the escrow order satisfies the above three factors: it is directed to the Almond Board, enforceable by contempt, and designed to protect Cal-Almond by placing the assessments sought in the complaint in escrow pending the resolution of the action. Cf. id. at 826 (holding that lis pendens order is not appealable because "[t]he fact that the lis pendens does not compel a party to act or refrain from acting under threat of contempt fundamentally distinguishes it from an injunction"). Moreover, given that we have held that the violation of a marketing order gives rise to a presumption of irreparable injury, the escrow order, which essentially permits Cal-Almond to continue to refuse to pay the Almond Board owed assessments, has serious or irreparable consequences. Finally, the order cannot be effectively challenged absent immediate appeal.
 
 
 10
 Thus, we conclude that the escrow order is appealable.
 
 
 11
 B. DENIAL OF THE SECRETARY'S MOTION FOR A PRELIMINARY INJUNCTION
 
 1. Standard of Review
 
 12
 We review the denial of a motion for preliminary injunction to determine whether the district court "abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." Triad Systems Corp. v. Southeastern Express Co., 64 F.3d 1330, 1334 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1015, 134 L.Ed.2d 96 (1996); United States v. Nutri-Cology, Inc., 982 F.2d 394, 397 (9th Cir.1992).
 
 2. Analysis
 
 13
 The Secretary argues that the district court abused its discretion in failing to grant a preliminary injunction enforcing the almond marketing order for the years at issue, claiming that the court impermissibly considered the almond handlers defenses to enforcement. We disagree.
 
 
 14
 To begin, we acknowledge that the Secretary correctly contends that he has a right to enforce the terms of a marketing order, regardless of any defenses that have not yet been administratively exhausted. The Act permits an aggrieved handler to present an administrative petition " 'stating that any [marketing] order or any provision of any such order or any obligation imposed in connection [with an order] is not in accordance with law and praying for a modification thereof or to be exempted therefrom.' " Saulsbury Orchards and Almond Processing, Inc. v. Yeutter, 917 F.2d 1190, 1193-94 (9th Cir.1990) (quoting 7 U.S.C. § 608c(15)(A)). After the Secretary has rendered a final decision, handlers may seek judicial review in district court. Id.; 7 U.S.C. § 608c(15)(B).
 
 
 15
 Regardless of any pending petition, the Secretary can file an enforcement action pursuant to 7 U.S.C. § 608a(6) "to enforce, and to prevent and restrain any person from violating any order, regulation, or agreement" issued pursuant to the Act. 7 U.S.C. § 608a(6). 7 U.S.C. § 608c(15)(B) further provides that "[t]he pendency of proceedings instituted pursuant to the subsection (15) shall not impede, hinder, or delay the United States or the Secretary of Agriculture from obtaining relief pursuant to section 608a(6) of this title." 7 U.S.C. § 608c(15)(B).
 
 
 16
 Both the Supreme Court and this court have interpreted § 608c(15)(B) as requiring exhaustion of administrative remedies through a § 608c(15)(A) proceeding prior to asserting any challenge to a marketing order, whether as a defense to an enforcement action or as a direct challenge. See United States v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946) (milk handlers could not assert that marketing order was not in accordance with law as a defense to § 608a(6) enforcement action until final decision was rendered on pending administrative petition); Saulsbury Orchards, 917 F.2d at 1194 (holding that handlers could not bring action challenging Almond Board's marketing order until administrative remedies were exhausted); Navel Orange Administrative Committee v. Exeter Orange Co., Inc., 722 F.2d 449, 453-54 (9th Cir.1983) ("[A] defendant in an enforcement action cannot raise affirmative defenses which have not first been finally determined in a § 6008c(15)(A) administrative proceeding."); see also Pescosolido v. Block, 765 F.2d 827, 830-31 (9th Cir.1985) (holding that mandamus could not be invoked nor could the handlers seek declaratory relief under the A.P.A. because either would permit evasion of the statutory exhaustion requirements of 7 U.S.C. § 608c(15)(A)).
 
 
 17
 Thus, in the typical case, we agree that the district court may not consider whether the defenses to the marketing orders raised by the almond handlers in their administrative petition would ultimately prevail in determining whether to grant a preliminary injunction. See United States v. Riverbend Farms, Inc., 847 F.2d 553, 559 (9th Cir.1988) (In an enforcement action, the only question before the court is whether the defendants are handlers and whether they have complied with the marketing orders.). Moreover, given that it is undisputed that the handlers have not complied with the order and that irreparable injury is presumed from a failure to comply, Navel Orange, 722 F.2d at 452, the Secretary would normally be entitled to a preliminary injunction enforcing the order.
 
 
 18
 We are convinced, however, that this is far from the typical case. Accordingly, we consider whether the denial of the preliminary injunction and the entering of the escrow order were an appropriate exercise of the district court's equitable discretion.
 
 
 19
 Although the handlers may not assert defenses in an enforcement action prior to administrative exhaustion of their petition, the district court may consider (1) whether to exercise its equitable powers to stay the action or (2) whether to order that the Secretary act on the pending appeal. In Ruzicka, the Supreme Court noted that it was not called upon to decide what equitable powers the district court could exercise in an enforcement action, because the milk handlers had withdrawn their motion for a stay pending the disposition of their petition before the Secretary. Ruzicka, 329 U.S. at 295-96, 67 S.Ct. at 210-11. Similarly, in Riverbend Farms, we noted that although the Act does not permit a handler to assert a defense to a forfeiture proceeding prior to exhausting administrative remedies, "the district court could exercise its equitable powers to stay distribution of the damage award until completion of the administrative proceeding." 847 F.2d at 559 n. 7. Finally, in Navel Orange, we upheld the district court's refusal to stay the § 608a(6) enforcement proceeding until resolution of § 608c(15)(B) administrative proceeding, reasoning that we need not decide whether the district court had the inherent equitable power to grant such a stay, as the orange handlers failed to show "unreasonable delay or bad faith such as to constitute denial of due process as required by 7 U.S.C. § 608c(15)(A); by the Administrative Procedure Act, 5 U.S.C. § 551 et seq., or by the Fifth Amendment." 722 F.2d at 452.[2]
 
 
 20
 Thus, we conclude that the district court has the inherent equitable power to stay an enforcement action, particularly where the court finds unreasonable delay by the Secretary in ruling on a pending petition, or bad faith by the Secretary in bringing the enforcement action. Moreover, we conclude that in the circumstances of this case, such an exercise of equitable discretion was appropriate.
 
 
 21
 To begin, we note that the Secretary has often unilaterally determined to stay an enforcement action while an administrative petition is pending. In fact, in Cal-Almond I, the Secretary voluntarily stayed its enforcement action while the First Amendment issues were administratively exhausted. Here, the Secretary explains his unwillingness to do the same by claiming that the generic advertising program for almonds has been destroyed due to non-compliance of the five handlers. And yet, given that the old program was held to violate the handlers First Amendment rights and the new program was held by the ALJ to be constitutionally infirm as well, it would appear that the Secretary would have even more reason to stay this enforcement action.
 
 
 22
 At the same time, the judgment owed in Cal-Almond II has not yet been paid by the Secretary, fueling the handlers fears that any funds paid for the years at issue here will not be promptly reimbursed should the handlers succeed in their challenge. Moreover, the Secretary represented at argument that he has recently issued an Order to Show Cause why the pending administrative petition should not be stayed pending the Supreme Court's decision regarding the pending petition for certiorari. Again, the Secretary's position appears to be that he is legally entitled to pursue this enforcement action and simultaneously delay the administrative decision, and we should not even consider the equities of his doing so.
 
 
 23
 We disagree. We conclude that the district court's denial of the preliminary injunction and entrance of the escrow order were an appropriate exercise of its discretion in the unusual circumstances of this case.
 
 C. THE ESCROW ORDER
 
 24
 The government also appeals from the district court's September 12, 1995 escrow order, arguing that the district court erred in requiring the Almond Board to pay into the court registry the $862,549 Cal-Almond mistakenly paid to the Board as assessments.
 
 
 25
 Turning to the merits of the appeal, the government argues that the escrow order undermines the very purpose of the statutory enforcement scheme by permitting the handlers to avoid their obligation under the marketing order to pay assessments, although they have not yet exhausted their administrative remedies. See Ruzicka, 329 U.S. at 293, 67 S.Ct. at 210 ("Failure by handlers to meet their obligations promptly would threaten the whole scheme. Even temporary defaults by some handlers may work unfairness to others, encourage wider non-compliance, and engender those subtle forces of doubt and distrust which so readily dislocate delicate economic arrangements."); Navel Orange, 722 F.2d at 452 ("Pending resolution of the administrative proceeding, Exeter et al. must comply with the marketing orders. If the ultimate determination of the administrative proceeding, emanating either from the Secretary of Agriculture or from the federal courts through the statutory right of appeal, should substantiate Exeter et al.'s challenges to the marketing orders, then refund of any paid assessments found not to have been due would be in order.").
 
 
 26
 For the reasons discussed above, we are persuaded that this case is the unusual case in which the district court may exercise its inherent equitable powers to stay distribution of the assessments pending the outcome of the administrative proceeding. See Riverbend Farms, 847 F.2d at 559 n. 7. We believe that this is what the district court did in this case by entering the escrow order.
 
 III.
 
 27
 For the foregoing reasons, we AFFIRM the denial of the preliminary injunction and the escrow order.
 
 
 
 **
 Hon. Sarah S. Vance, United States District Judge for the Eastern District of Louisiana, sitting by designation
 
 
 [1]
 The handlers are Cal-Almond, Inc., Dole Dried Fruit and Nut Co., Gold Hill Nut Co., Del Rio Nut Co. and James G. Crecilius dba Monte Vista Farming Co
 
 
 [2]
 In addition, we have also remanded an enforcement action to the district court to determine whether the Secretary has unreasonably delayed in issuing a final appealable order. In Saulsbury Orchards, we held that an almond handler was prohibited from bringing an action challenging the constitutionality of a marketing order until it exhausted its administrative remedies. 917 F.2d at 1195. Although we affirmed the dismissal of the action for failure to exhaust, we remanded to the district court for a determination under 5 U.S.C. § 706(1) whether the Secretary's action had been unreasonably delayed, "in which case the district court shall order the Secretary to expedite final disposition of the administrative proceeding in this case." Id. at 1197