**GALLO CATTLE COMPANY, a California limited partnership, Plaintiff–Appellant,**

v.

**THE UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant–Appellee.**

No. 97–15198.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1997.

Decided Nov. 3, 1998.

Brian C. Leighton, Clovis, California, for plaintiff-appellant.

Mark W. Pennak, United States Department of Justice, Washington, D.C., for defendant-appellee.

Before: FLETCHER, T.G. NELSON, Circuit Judges, and WHALEY,* District Judge.

WHALEY, District Judge:

Gallo Cattle Company appeals the district court's dismissal of its Complaint for lack of subject matter jurisdiction. Gallo, a milk producer required under federal law to pay assessments to the National Dairy Promotion and Research Board, is currently challenging the constitutionality of these assessments in an ongoing administrative proceeding before the Secretary of Agriculture. In the administrative proceeding Gallo sought permission to escrow current and future assessments pending resolution of the administrative proceeding. Gallo's request was denied and Gallo brought suit in district court seeking review of the Secretary's decision denying Gallo's request for interim relief. Concluding that it lacked subject matter jurisdiction, the district court granted the Department of Agriculture's Motion for Judgment on the Pleadings. We affirm.

## FACTUAL BACKGROUND

Gallo Cattle Company ("Gallo") owns one of the largest dairy herds in the nation. Gallo uses the milk from its herd solely for the production of cheese. As a dairy producer, Gallo is subject to the provisions of the Dairy and Tobacco Adjustment Act of 1983 ("Dairy Act"), Pub.L. No. 98–180, 97 Stat.

---

* Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

1128 (1983) (codified as amended 7 U.S.C. §§ 4501–38). The Dairy Act requires· the Secretary of Agriculture to establish a national program for dairy product promotion, research, and consumer education, *see* 7 U.S.C. § 4504 (1992), which the Secretary did in 1984. *See* 7 C.F.R. pt. 1150 (1997). This program, the Dairy Promotion Program, is administered by the National Dairy Promotion and Research Board ("National Board"), which consists of 36 milk producers appointed by the Secretary of Agriculture. 7 C.F.R. § 1150.131 (1997).

Pursuant to the Dairy Promotion Program, milk producers are required to pay to the National Board a 15 per hundredweight assessment on milk for commercial use in fluid form or for manufactured products, including cheese. 7 C.F.R. § 1150.152 (1997). The assessment is reduced by up to 10 per hundredweight for payments made to a "qualified" state dairy program. 7 C.F.R. §§ 1150.153, 1150.152(c)(1997).[1] The National Board uses the assessments to defray the cost of administering the Dairy Promotion Program, which includes the costs associated with dairy product promotion, research projects, and nutrition education projects. *See generally* 7 C.F.R. § 1150.140 (1997).

## PROCEDURAL BACKGROUND

On April 16, 1996, Gallo filed a petition with the United States Secretary of Agriculture ("Secretary") challenging the assessments it was required to pay to the National Board pursuant to the Dairy Promotion Program as violative of the First Amendment of the United States Constitution. In its Petition, Gallo sought interim relief. Specifically, Gallo sought permission to pay its assessments into escrow pending a decision on the merits of the petition. In an Order filed on May 29, 1996, the judicial officer, who acts for the Secretary in the adjudication of these

petitions, denied Gallo's request for interim relief.

On June 18, 1996, Gallo filed an action in the United States District Court for the Eastern District of California seeking review of the judicial officer's Order denying interim relief. On October 7, 1996, Gallo moved for a preliminary injunction and/or summary judgment,· and on October 8, 1996, the respondent,· the United States Department of Agriculture ("USDA") moved for judgment on the pleadings. On November 8, 1996, the district court ruled from the bench that neither the Dairy Act nor the Administrative Procedure Act vested it with jurisdiction over the action. Accordingly, the district court dismissed Gallo's Complaint for lack of subject matter jurisdiction and filed an order memorializing that ruling on November 13, 1996. On January 10, 1997, Gallo timely filed its Notice of Appeal.

Since the dismissal by ᴛhe district court, the United States Supreme Court issued its opinion in *Glickman v. Wileman Bros.*, 521 U.S. 457, 117 S.Ct. 2130, 138 L.Ed.2d 585 (1997). In *Glickman*, the Court upheld a marketing order promulgated by the Secretary of Agriculture under the Agricultural Marketing Agreement Act of 1937, the constitutionality of which had also been challenged as violative of the First Amendment. On November 14, 1997, this court ordered the parties to submit supplemental briefing on the effect, if any, of the *Glickman* decision on this appeal.[2]

## DISCUSSION

 We review *de novo* a district court's conclusion that it lacks subject matter jurisdiction. *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 396 (9th Cir.1996).

---

1. Gallo participates in a California dairy program administered by the California Milk Producers Advisory Board. Pursuant to that program, Gallo pays to the California Board 10 per hundredweight of milk produced. Accordingly, because California's program is a "qualified" dairy.program as defined by the National Dairy Act, Gallo's payment to the California program reduces its assessment due under the National Dairy Act. *See* 7 U.S.C. § 4504(g) (1992).

2. Given this court's conclusion that the district court did not have jurisdiction to review the Judicial Officer's denial of interim relief, any impact of the decision in *Glickman* on Gallo's underlying Petition currently before the Secretary is not before the court.

## I. THE DAIRY PROMOTION PROGRAM DOES NOT GRANT THE DISTRICT COURT JURISDICTION TO REVIEW THE AGENCY'S DENIAL OF INTERIM RELIEF, UNTIL SUCH TIME AS THE SECRETARY RULES ON THE MERITS OF THE UNDERLYING PETITION.

■ Title 7 U.S.C. § 4509 (1992) sets forth the petition and review provisions of the Dairy Promotion Program. The statutory provision for administratively challenging the legality of any order issued pursuant to the Dairy Promotion Program is found in subsection (a) of § 4509, which provides:

> Any person subject to any order issued under this subchapter may file with the Secretary a petition stating that any such order or any provision of such order or any obligation imposed in connection therewith is not in accordance with law and requesting a modification thereof or an exemption therefrom. The petitioner shall thereupon be given an opportunity for a hearing on the petition, in accordance with regulations issued by the Secretary. After such hearing, *the Secretary shall make a ruling on the petition,* which shall be final if in accordance with law.

7 U.S.C. § 4509(a) (emphasis added). The statutory provision conferring jurisdiction in the federal district courts to review the Secretary's administrative ruling is found in the next subsection of § 4509, which provides in relevant part:

> The district courts of the United States in any district in which such person is an inhabitant or carries on business are hereby vested with jurisdiction to review *such ruling,* if a complaint for that purpose is

filed within twenty days from the date of the entry of such ruling.

7 U.S.C. § 4509(b) (emphasis added).

■ Thus, Congress has explicitly provided the procedure that is to be used to challenge orders issued pursuant to the Dairy Promotion Program.[3] Such a procedure mandates exhaustion of administrative remedies prior to seeking judicial review in district court. *See Rasmussen v. Hardin,* 461 F.2d 595, 597–98 (9th Cir.1972) (interpreting the same language in 7 U.S.C. § 608c(15) as requiring a milk handler to exhaust administrative remedies prior to challenging marketing orders promulgated under the Agricultural Marketing Agreement Act). Further, while judicially-created exhaustion requirements may be waived by the courts for discretionary reasons, statutorily-provided exhaustion requirements deprive the court of jurisdiction and, thus, preclude any exercise of discretion by the court. *See Reid v. Engen,* 765 F.2d 1457, 1462 (9th Cir.1985).

Here, the district court correctly interpreted § 4509 as vesting it with jurisdiction only after the Secretary rules on the merits of Gallo's petition. Section 4509(a) provides that the Secretary will make "a ruling" on the petition. The use of the singular form of "ruling" in § 4509(a) indicates that only one ruling will be rendered for each petition filed-the Secretary's final decision on the merits of the petition. Pursuant to § 4509(b), "such ruling[s]" are reviewable by the district courts to determine if they are in accordance with law. The word "such" in § 4509(b), identifying those rulings over which the district court has jurisdiction to review, necessarily refers back to the "ruling on the petition" made by the Secretary pursuant to § 4509(a). *Cf. Public Util. Comm'r*

---

3. We have interpreted such provisions as requiring that all challenges, including constitutional ones, first be presented to the Secretary of Agriculture. *See, e.g., Saulsbury Orchards & Almond Processing, Inc. v. Yeutter,* 917 F.2d 1190, 1195–96 (9th Cir.1990) (holding that an action challenging the constitutionality of almond marketing orders was properly dismissed by the district court for failure to exhaust administrative remedies before the Secretary of Agriculture); *see also Rasmussen v. Hardin,* 461 F.2d 595, 597–98 (9th Cir.1972) (holding that a milk producer-handler's due process challenge to a marketing order was properly dismissed for failure to exhaust administrative remedies). Sound policy reasons underlie the requirement that all challenges, including constitutional ones, be presented first to the Secretary; it prevents circumvention of the exhaustion requirement, gives the district court the benefit of the Secretary's experience and understanding of the milk industry, and allows for the possibility of resolution of the challenge without reaching the constitutional question. *See Saulsbury,* 917 F.2d at 1195 (internal citations omitted).

*of Or. v. Bonneville Power Admin.*, 767 F.2d 622, 628 (9th Cir.1985) (concluding that beginning a sentence with the words "such suits" necessarily refers back to the "suits" specified in the previous sentence). Therefore, § 4509(b) vests jurisdiction in the district courts to review only the Secretary's final ruling on a petition filed pursuant to § 4509(a).

The administrative decision that Gallo seeks the district court to review is not "such [a] ruling" as contemplated by § 4509 because it is not the ruling by the Secretary on Gallo's Petition. To the contrary, it is merely an order denying the interim relief, which Gallo is seeking *pending the Secretary's ruling* on its Petition. Accordingly, because the Secretary has not yet ruled on Gallo's Petition, the district court correctly concluded it had not yet acquired jurisdiction Pursuant to § 4509(b).

Gallo's argument to the contrary is difficult to discern; it is premised on the erroneous conclusion that § 4509(b) also vests the district court with jurisdiction to review final agency action by the Secretary that inflicts actual injury, even if that action occurs prior to the Secretary's ruling on a petition. That conclusion, however, cannot be reconciled with the plain language of § 4509. The agency action complained of here, whether denominated a ruling, a decision, or an order, is not the Secretary's ruling on Gallo's Petition challenging the assessments imposed by the Dairy Promotion Program. Accordingly, § 4509(b) cannot be the basis for district court jurisdiction to review the decision.

## II. THE ADMINISTRATIVE PROCEDURE ACT DOES NOT INDEPENDENTLY VEST THE FEDERAL DISTRICT COURTS WITH JURISDICTION TO REVIEW AN AGENCY'S DISCRETIONARY DENIAL OF INTERIM RELIEF.

■ Gallo alternatively asserts that the district court had jurisdiction to review the judicial officer's denial of interim relief pursuant to the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1989) ("APA"). However, despite the broad language of the Administra-

tive Procedure Act, it is well settled that the APA does not independently confer jurisdiction on the district courts. *See Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Tucson Airport Auth. v. General Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir.1998); *Bonneville Power Admin.*, 767 F.2d at 627; *McCartin v. Norton*, 674 F.2d 1317, 1319 (9th Cir.1982). Rather. the APA prescribes standards for judicial review of an agency action, once jurisdiction is otherwise established. *See Staacke v. United States Secretary of Labor*, 841 F.2d 278, 282 (9th Cir.1988) (citing *Califano*, 430 U.S. at 106–07 & n. 6, 97 S.Ct. 980). Accordingly, the APA could not provide the district court with jurisdiction to review the judicial officer's denial of interim relief.

■ Nonetheless, while beyond dispute that the APA does not provide an independent basis for subject matter jurisdiction, a federal court has jurisdiction pursuant to 28 U.S.C. § 1331 over challenges to federal agency action as claims arising under federal law, unless a statute expressly precludes review. *See Parola v. Weinberger*, 848 F.2d 956, 958 (9th Cir.1988). Thus, while the APA does not confer a district court with jurisdiction, it does provide a waiver of sovereign immunity in suits seeking judicial review of a federal agency action under § 1331. *Id.*

■ However, the APA's waiver of sovereign immunity contains several limitations. Of relevance here is § 704, which provides that only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court, are subject to judicial review." 5 U.S.C. § 704. As we have already concluded that the agency action complained of here is not made reviewable by § 4509, the judicial review provision of the Dairy Promotion Program, it is only reviewable if it constitutes "final agency action" for which there is no other adequate remedy in a court. Gallo's assertion that the decision to deny interim relief is "final agency action" is without merit.

■ Agency action is "final" if a minimum of two conditions are met: "[f]irst, the action must mark the consummation of the agency's

decision making process ... it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Western Radio Servs. Co. v. Glickman,* 123 F.3d 1189, 1196 (9th Cir.1997) (internal quotes omitted) (quoting *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 1168, 137 L.Ed.2d 281 (1997)); *see also FTC v. Standard Oil Co.,* 449 U.S. 232, 241, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (noting that the action must be a definitive statement of the agency's position with concrete legal consequences).

The judicial officer's discretionary decision not to allow Gallo to pay its assessments into escrow is not a "final agency action" because it does not determine the rights or obligations of the parties, nor are there legal consequences flowing from it. While Gallo has an obligation to pay assessments to the National Board, that obligation arises pursuant to the Dairy Promotion Program and the regulations promulgated thereunder. *See* 7 U.S.C. § 4504; 7 C.F.R. § 1150.152. It does not arise from the judicial officer's denial of interim relief. The judicial officer's denial of interim relief imposes no obligation on Gallo at all. Further, there are no legal consequences arising from the decision denying interim relief, nor does the decision fix the rights of the parties.

While Gallo obliquely refers to the civil penalty that can be imposed for failure to timely pay any assessment due, that potential consequence does not result from the judicial officer's denial of interim relief. Rather, any penalty imposed on Gallo for untimely payment of assessments would result from Gallo's disregard of its statutory obligation. Further, the authority for any such penalty is 7 U.S.C. § 4510(b), not the judicial officer's order denying interim relief. Accordingly, as there are no legal consequences resulting from the order denying interim relief and, thus, no "final agency action," 28 U.S.C. § 1331 and § 704 of the APA could not vest the district court with jurisdiction to review the order.

█ Finally, Gallo asserts that due process requires that either § 4509 or the APA be construed as vesting the district court with jurisdiction over its Complaint because a contrary construction would result in "irreparable injury" to Gallo with no "clear and certain remedy." A monetary assessment on milk producers is without question a deprivation of property. Further, since the judicial officer here has denied interim relief pending the conclusion of the administrative proceeding, the constitutionality of those assessments will be determined post-deprivation. Accordingly, the Due Process Clause requires that Gallo have, in addition to a fair opportunity to challenge the assessments, a clear and certain remedy for a successful challenge. *See McKesson Corp. v. Division of Alcoholic Bev. & Tobacco,* 496 U.S. 18, 36–39, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). Gallo has both.

First, Gallo has an opportunity to challenge these assessments both in an administrative proceeding before the Secretary of Agriculture and in a suit filed in district court to determine whether the Secretary's ruling is in accordance with law. Second, Gallo has a clear and certain remedy for a successful challenge because a refund of any assessments found not to have been due would be in order. *See, e.g., Saulsbury Orchards & Almond Processing, Inc. v. Yeutter,* 917 F.2d 1190, 1195 (9th Cir.1990); *United States v. Riverbend Farms, Inc.,* 847 F.2d 553, 559 (9th Cir.1988); *Navel Orange Admin. Comm. v. Exeter Orange Co.,* 722 F.2d 449, 452 (9th Cir.1983).

Indeed, this court has already held that the post-deprivation remedy available to Gallo, namely a refund of assessments found not to have been due, is constitutionally sufficient in that it provides a "clear and certain remedy." *See Cal–Almond, Inc. v. United States Dep't of Agric.,* 14 F.3d 429 (9th Cir.1993). The court in *Cal–Almond* rejected a due process challenge to a statutory scheme that required annual assessments to be paid pending the conclusion of the administrative proceeding wherein the constitutionality of the assessments was being challenged. *Id.* While the plaintiffs in *Cal–Almond* argued that this procedure did not provide them with a "clear and certain remedy" in the event they prevailed, the court held that a

refund of any assessments found not to have been due is a sufficient remedy for parties successfully challenging the constitutionality of a marketing order. *Id.* (*citing Saulsbury,* 917 F.2d at 1195).

Gallo's attempt to distinguish *Cal–Almond* from the instant case is unsuccessful. Gallo asserts that since the Government's counsel here has refused to stipulate to a refund of all assessments found not to have been due, the constitutionally sufficient remedy available to the plaintiffs in *Cal–Almond* is not present here. The *Cal–Almond* decision, however, does not suggest that due process requires plaintiffs be given a pre-trial guarantee that a favorable judgment will be paid. *See also Saulsbury,* 917 F.2d at 1195 (refusing to find that the remedy available to milk handlers who succeed in challenging a marketing order is constitutionally deficient because there was no fund from which the Secretary could award damages). We are satisfied that if Gallo prevails in its challenge to the dairy assessments, an appropriate remedy may be fashioned. The refusal of defense counsel to stipulate to a refund does not foreclose that remedy.

Gallo also cites *United States v. Cal–Almond, Inc.,* 102 F.3d 999 (9th Cir.1996) (*"Cal–Almond II"*) in support of its due process argument. That decision, however, is inapposite. *Cal–Almond II,* an enforcement proceeding, was "an unusual case," wherein we upheld the district court's use of its inherent equitable power to stay the enforcement proceeding and the distribution of assessments already paid, pending the resolution of an administrative challenge to the constitutionality of the assessments. The court in *Cal–Almond II* noted that its conclusion that a district court has the inherent equitable power to stay an enforcement proceeding and the distribution of assessments, is particularly true when there is unreasonable delay by the Secretary in ruling on the petition challenging the assessment or bad faith by the Secretary in bringing the enforcement proceeding. *Id.* at 1004.

While the court in *Cal–Almond II* recognized the district court's equitable power to fashion such a remedy in an "unusual case"

properly before it, *see id.* at 1005, it did not suggest that due process requires that such a remedy be available in every case. Indeed, the availability of such a remedy would effectively eviscerate the statutory exhaustion requirement. *See Saulsbury,* 917 F.2d at 1195–96. Accordingly, we find no merit to Gallo's argument that due process requires immediate judicial review of an agency's decision denying interim relief.

## CONCLUSION

The district court properly dismissed Gallo's Complaint for lack of subject matter jurisdiction. The district court was not yet vested with jurisdiction pursuant to § 4509(b) of the Dairy Act, because the Secretary had not yet ruled on Gallo's Petition. Additionally, the APA could not vest the district court with jurisdiction since the APA does not independently confer jurisdiction in federal district courts but, rather, prescribes the standards for judicial review once jurisdiction is independently established. Finally, general federal question jurisdiction, pursuant to 28 U.S.C. § 1331 and § 704 of the APA, is also precluded as the Secretary's discretionary denial of interim relief does not constitute "final agency action."

**AFFIRMED.**